UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re:  TRINITY INNOVATIVE | : | Case No. 09-20579REF |
| ENTERPRISES, LLC, | : | Chapter 7 |
| Debtor | : | |

# STATEMENT IN SUPPORT OF ORDER DENYING DEBTOR'S MOTIONS TO RECONSIDER

Debtor, Trinity Innovative Enterprises, LLC ("Debtor") has filed two Motions To Reconsider, both of which are opposed by DirectBuy, Inc. ("DirectBuy"). Specifically, Debtor seeks reconsideration of: (1) My July 13, 2009 Order, through which I denied Debtor's Motion To Assume Executory Contract With DirectBuy, Inc. Pursuant to 11 USC [sic]§365(a) ("the Motion To Assume"); and (2) my July 15, 2009 Order through which I granted DirectBuy's Motion for Relief from the Automatic Stay To Exercise Remedies Under the Franchise Agreement Due to Post-Petition Breaches by the Debtor and/or for Adequate Protection (the parties refer to this motion as DirectBuy's Third Stay Relief Motion; I will hereafter do the same).  For the reasons that follow, I deny both of Debtor's Motions To Reconsider.

## A.  Motions To Reconsider.

Neither the Federal Rules of Civil Procedure nor the Federal Rules of Bankruptcy Procedure specifically refer to, or authorize the filing of, a motion to

1

reconsider a court's decision. Nonetheless, a motion to reconsider, if filed within ten days of the date of the decision sought to be reconsidered,[1] will generally be treated as a motion to alter or amend a judgment under Fed. R. Civ. P., Rule 59(e). United States v. McGlory, 202 F.3d 664, 668 (3d Cir. 2000). Rule 59(e) is made applicable to cases brought under the Bankruptcy Code by Fed. R. Bankr. P., Rule 9023.

A motion to alter or amend a judgment is an extraordinary remedy that should be used sparingly because of the strong interest in preserving the finality of a court's decision and conserving scarce judicial resources. Selveras v. M/V Cartagena de Indias, 959 F. Supp. 270, 272 (E.D. Pa. 1997); In re Savoie, No. 05-13263DWS, 2006 WL 893610, at *1 (Bankr. E.D. Pa. March 9, 2006). The scope of Rule 59(e), therefore, is very narrow and a party seeking reconsideration must provide compelling evidence that the prior decision should be reconsidered. The Third Circuit has instructed that a proper motion to alter or amend judgment must rely on one of three major grounds: (1) An intervening change in controlling law; (2) the availability of new evidence not available previously; or (3) the need to correct clear error of law or prevent manifest injustice. North River Ins. Co. v. Cigna Reinsurace Co., 52 F.3d 1194, 1218 (3d Cir. 1995). See also Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985); Keyes v. Nat'l. R.R. Passenger Corp., 766 F. Supp. 277, 280 (E.D. Pa. 1991).

---

[1]The Motions To Reconsider were both timely filed.

In addition, a motion for reconsideration may not be used to advance new arguments, issues, or facts not previously presented to the court. <u>Williams v. City of Pittsburgh</u>, 32 F. Supp. 2d 236, 238 (W.D. Pa. 1998)("[T]he parties are not free to relitigate issues the court has already decided."); <u>Hower v. Wal-Mart Stores, Inc.</u>, Civil Action No. 08-1736, 2009 WL 2047892, at*2 (E.D. Pa. July 10, 2009). Nor is it "at the disposal of an unsuccessful party to 'rehash' the same arguments and facts previously presented." <u>Keyes</u>, 766 F. Supp. at 280. "'Dissatisfaction with the Court's ruling is not a proper basis for reconsideration.'" <u>Hower</u>, 2009 WL 2047892, at*2 (citation omitted). As the court stated in <u>Quaker Alloy Casting Co. v. Gulfco Indus., Inc.</u>, 123 F.R.D. 282, 288 (N.D. Ill. 1988), "this Court's opinions are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." <u>See</u> <u>also</u> <u>Williams</u>, 32 F. Supp. 2d at 238 ("[A] motion for reconsideration is not properly grounded in a request for a court to rethink a decision it has already made, rightly or wrongly."); <u>In re Kuhar</u>, No. 04-36627DWS, 2007 WL 2245912, at*2 (Bankr. E.D. Pa. Aug. 1, 2007)("'[W]hatever may be the purpose of Rule 59(e) it . . . [was not] . . . intended to give the unhappy litigant one additional chance to sway the judge.'")(alteration in original)(citation omitted). I need not reconsider repetitive arguments that have already been fully examined. <u>Hower</u>, 2009 WL 2047892, at*2.

## B. Motion To Reconsider July 15, 2009 Order Denying Debtor's Motion To Assume.

I first address Debtor's Motion To Reconsider the July 13, 2009 Order denying the Motion To Assume ("Motion To Reconsider July 13, 2009 Order"). Debtor does not argue that reconsideration is required because of an intervening change in controlling law or to correct a clear error of law or prevent manifest injustice. Instead, Debtor maintains that my decision should be reconsidered because Debtor claims to have newly discovered evidence. Debtor believes its new evidence shows "that the Court was misled by an attorney functioning as a witness." Debtor's Brief Regarding Undecided Motions, filed on September 18, 2009, docket entry 233, at p. 3.

This alleged "newly discovered evidence," however, is not really "new." It was readily available to Debtor through discovery or otherwise prior to the May 27, 2009 hearing on which my July 13, 2009 decision was based. To qualify as "newly discovered," for the purposes of Rule 59(e), the evidence must not have been available to the party proponent at any time prior to entry of the court's decision. Bradley v. Work, 154 F.3d 704, 709 (7th Cir. 1988); United States ex rel. Atkinson v. Pennsylvania Shipbuilding Co., No. Civ. A. 94-7316, 2004 WL 2095442, at*1 (E.D. Pa. Sept. 16, 2004). Courts consistently hold that "new evidence" is not new for purposes of Rule 59(e) if a party either possessed the evidence, or could have possessed it, prior to entry of the court's decision. Bailey v. United Airlines, 279 F.3d 194, 201 (3d Cir. 2002); Bradley, 154 F.3d at 709; Harsco Corp., 779 F.2d at 909; Atkinson, 2004 WL 2095442,

at* 1. "To warrant a new trial the evidence must not have been known to the movant at the

time of trial; and, moreover, the movant must have been excusably ignorant of the facts,

i.e., the evidence must be such that it was not discoverable by diligent search." Savoie,

2006 WL 893610, at *2 (quoting 6A Moore, Moore's Federal Practice, ¶59.08[3], at 59-

101 to 59-102 (2d Ed. 1995).

> The alleged "newly discovered" evidence offered by Debtor consists of:
>
> (1) A Uniform Franchise Offering Circular, dated October 30,
> 2003, that was allegedly given to Tom and Joyce Giacchi (the
> principals of Debtor) by DirectBuy in 2004 (Exhibit D-30);
> (2) a Uniform Franchise Offering Circular, dated October 28,
> 2005, that was allegedly provided to Harvey Zimmerman (who
> has been employed by Debtor for 3½ years) by DirectBuy in
> 2006 (Exhibit D-31);
> (3) a DirectBuy Uniform Franchise Offering Circular dated
> October 31, 2007 that Debtor received through discovery from
> counsel for DirectBuy (Exhibit D-34); and
> (4) a DirectBuy Uniform Franchise Offering Circular dated
> October 31, 2007, as amended January 31, 2008, that Debtor
> received through discovery from counsel for DirectBuy
> (Exhibit D-35).[2]
>
> None of this evidence is truly "newly discovered," as required by Rule

---

[2]Debtor declined to offer Exhibits D-33 and D-37 into evidence and I sustained
DirectBuy's objection to the admissibility of Exhibit D-36. Exhibit D-32, which was admitted
into evidence, is a chart that compares various provisions of Exhibit D-30 (the franchise offering
circular provided to the Giacchis) and Exhibit D-31 (the franchise offering circular provided to
Mr. Zimerman). Exhibit D-32 is simply an aid to highlight the differences between the two
offering circulars and was not offered as "newly discovered evidence." DirectBuy objected to the
admissibility of Exhibits D-34 and D-35 because they were not identified or raised as potential
issues in Debtor's Motion To Reconsider. I took this objection under advisement. I will now
admit these documents into evidence as Debtor requested. Exhibits D-34 and D-35 are
admissible, but they are not persuasive on the issue before me and have very little relevance to
this dispute.

59(e).  All of this evidence was either already in Debtor's possession or could have been

in Debtor's possession through discovery and a diligent search by the May 27, 2009

hearing.  The 2003 Uniform Franchise Offering Circular (Exhibit D-30) had been in the

possession of Debtor and its principals since the date it was provided to them by

DirectBuy in 2004.  The 2005 Uniform Franchise Offering Circular (Exhibit D-31) was in

the possession of one of Debtor's key employees, Mr. Zimmerman, since the date it was

given to him by DirectBuy in 2006.  Clearly, these two documents were available to

Debtor prior to the May 27, 2009 hearing.  The other two documents, the 2007 and 2008

DirectBuy Uniform Franchise Offering Circulars (Exhibits D-34 and D-35) while perhaps

not in the possession of Debtor or any of its agents or employees as of May 27, 2009, were

clearly discoverable by Debtor prior to the hearing through diligent search or discovery.  I

therefore find that none of these documents constitute "newly discovered" evidence as that

term is used in Rule 59(e), and Debtor's Motion To Reconsider my July 13, 2009 decision

must therefore be denied.

Even if I were to treat all of this evidence as "newly discovered," however, I

would deny Debtor's Motion To Reconsider my July 13, 2009 Order because the "newly

discovered" evidence has no probative value and, therefore, even if considered, it would

not have changed the outcome of this proceeding.  As the District Court stated in In re

Reading Broadcasting, Inc., 386 B.R. 562, 567 (E.D. Pa. 2008):

> Newly discovered evidence refers to evidence that: (1) is
> material and not merely cumulative; (2) was not discoverable

before trial through the exercise of reasonable diligence; and (3) would probably have changed the outcome of the trial. <u>Compass Technology, Inc. v. Tseng Laboratories, Inc.</u>, 71 F.3d 1125, 1130 (3d Cir. 1995). The movant bears a "heavy burden," which requires "more than a showing of the potential significance of the new evidence." <u>Bohus v. Beloff</u>, 950 F.2d 919, 930 (3d Cir. 1991)(quoting <u>Plisco v. Union R. Co.</u>, 379 F.2d 15, 17 (3d Cir. 1967), <u>cert. denied</u>, 389 U.S. 1014, 88 S.Ct. 590, 19 L.Ed.2d 660 (1967). Relief should only be granted when extraordinary justifying circumstances are present. <u>Id</u>.

Debtor argues that the Uniform Franchise Offering Circulars provided to the Giacchis and Mr. Zimmerman (Exhibits D-30 and D-31) show that a Marketing and Legislative Fund existed at DirectBuy. These documents, Debtor maintains, therefore contradict the testimony proffered by C. Joseph Yast, Esquire, at the May 27, 2009 hearing held on Debtor's Motion To Assume. During the hearing, Mr. Yast testified that no Marketing and Legislative Fund had existed at DirectBuy in the preceding three years, going back to May 27, 2006. Nothing in Exhibits D-30 and D-31, however, contradicts Mr. Yast's testimony because both of these Uniform Franchise Offering Circulars were prepared well before May 27, 2006. The Uniform Franchise Offering Circular given to the Giacchis was dated October 30, 2003.[3] The Uniform Franchise Offering Circular given to Mr. Zimmerman was dated October 28, 2005.[4] At best, these exhibits might demonstrate that a Marketing and Legislative Fund might have existed in October 2003

---

[3] Exhibit D-30.

[4] Exhibit D-31.

7

and in October 2005.  These exhibits do not impeach Mr. Yast's testimony that no

Marketing and Legislative Fund existed at DirectBuy for the three years preceding the

May 27, 2009 hearing.

In any event, the existence or non-existence of a Marketing and Legislative

Fund is not relevant to the issues I decided in my July 13, 2009 decision.  I found in my

July 13, 2009 decision that Mr. Yast "credibly testified that Direct Buy [sic] had no

Marketing and Legislative Fund and had not billed Debtor, or any of its other franchisees,

for contributions to a Marketing and Legislative Fund during the past three years."

Statement in Support of the Order Dated July 13, 2009, Determining That the Franchise

Agreement Between Debtor and Direct Buy [sic] Was Validly Terminated Pre-Petition

("July 13, 2009 Statement"), at p. 7.  All of the Uniform Franchise Offering Circulars

offered by Debtor as newly discovered evidence, (Exhibits D-30, D-31, D-34 and D-35),

actually corroborate this testimony because they each show in Item 6 that DirectBuy was

not collecting contributions from its franchisees for a Marketing and Legislative Fund at

the time each of the Uniform Franchise Offering Circulars was prepared.  Each Circular

recites that DirectBuy might require contributions from its franchisees for the Marketing

and Legislative Fund in the future, but this does not contradict Mr. Yast's testimony that

no such contributions were actually required.  I also determined that "Mr. Yast further

[credibly] testified that the amounts that Debtor and other franchisees were being charged

for sales leads had nothing to do with the Marketing and Legislative Fund and did not

represent contributions to that Fund." July 13, 2009 Statement, at pp. 7-8.

I therefore found that "Debtor's reliance on Section 3.03 of the Franchise

Agreement [which dealt with contributions that DirectBuy could require franchisees to

make to the Marketing and Legislative Fund in the future] to attack the validity of its

$189,677.08 Delinquent Debt owed to Direct Buy [sic] is therefore fundamentally flawed

and misplaced." Id. at p.8.  The existence or non-existence of a Marketing and Legislative

Fund, therefore, was and is not relevant to the issues I decided in my July 13, 2009

decision, and could not impact my decision.

The main issue presented by Debtor's Motion To Assume was whether

DirectBuy had validly terminated its franchise agreement with Debtor before Debtor filed

its bankruptcy petition.[5]  The answer to this question depended on whether Debtor was

delinquent in amounts owed to DirectBuy on June 19, 2008, when DirectBuy exercised its

right to terminate the franchise agreement with Debtor.  Based on the evidence presented

at the hearings held on Debtor's Motion To Assume, I specifically rejected Debtor's

argument that DirectBuy improperly billed it for certain charges.[6]

---

[5] Other issues were raised in Debtor's Motion To Assume, which I also decided in my July 13, 2009 Statement.  Debtor does not argue that its alleged "newly discovered" evidence is relevant to these other issues and I specifically find that it is not.

[6] Debtor had argued that DirectBuy's ability to charge its franchisees for sales leads was limited by a 3% cap referred to in Section 3.03 of the parties' Franchise Agreement.  Under Section 3.03, Debtor agreed to contribute, at such times as DirectBuy might designate, $1,000 per fiscal year to a Marketing and Legislative Fund.  Section 3.03 gives DirectBuy the right to increase this fee, provided that DirectBuy does not increase the amount of a franchisee's contributions to more than 3% of the gross amounts that the franchisee charges for new memberships. I specifically found credible, however, Mr. Yast's testimony that, in the preceding

Instead, I found that DirectBuy properly billed Debtor for all charges and

that Debtor was in fact delinquent in its payment of amounts owed to DirectBuy on June

19, 2008.  As a result, I concluded that DirectBuy validly terminated its franchise

agreement with Debtor before Debtor filed this bankruptcy petition and that Debtor

therefore could not assume the franchise agreement.  None of the alleged "newly

discovered" evidence proffered by Debtor contradicts this finding and conclusion, but

instead constitutes Debtor's attempt to "rehash" the same arguments it raised prior to my

July 13, 2009 decision.  For these reasons, Debtor's alleged "newly discovered" evidence

would not have changed my July 13 decision.  Debtor's Motion To Reconsider my July

13, 2009 Order must therefore be denied.[7]

---

three years, no Marketing and Legislative Fund existed and DirectBuy had not billed Debtor or
any of its other franchisees for contributions to such Fund.

I also found that the amounts that DirectBuy was billing Debtor and other franchisees for
sales leads had nothing to do with any Marketing and Legislative Fund and did not represent
contributions to such a Fund.  I therefore found Debtor's reliance on Section 3.03 in its attack on
the validity of the debt alleged to be owed to DirectBuy unpersuasive and fundamentally flawed.
Similarly, Debtor attempts to convince me that its alleged "newly discovered" evidence stands in
opposition to my decision that Debtor was delinquent in the amounts it owed to DirectBuy on
June 19, 2008.  This argument is again based upon Debtor's erroneous assumption that its
indebtedness to DirectBuy is somehow tied to Section 3.03 of the Franchise Agreement and a
Marketing and Legislative Fund. It remains equally unpersuasive.  In fact, Debtor is improperly
rehashing the same arguments it previously presented.  Keyes, 766 F. Supp. at 280; Hower, 2009
WL 2047892, at*2. See also Williams, 32 F. Supp. 2d at 238; In re Kuhar, 2007 WL 2245912,
at*2.  While, I "need not 'reconsider repetitive arguments that have [already] been fully
examined,'" Hower, 2009 WL 2047892, at*2 (citation omitted), I have given Debtor the benefit
of every doubt.  I have examined the alleged "newly discovered" evidence that Debtor submitted
as well as the arguments Debtor raises in its Motion and brief.  Upon such review, however, I
conclude that Debtor's arguments are erroneous and not persuasive.

[7]Debtor argues in its brief that its alleged "newly discovered" evidence shows that Debtor
was being billed for internet leads and other advertising and marketing costs in accordance with a

**C. Motion To Reconsider July 15, 2009 Order Granting DirectBuy's Third Stay Relief Motion.**

I next turn to Debtor's Motion To Reconsider the July 15, 2009 Order granting DirectBuy's Third Stay Relief Motion. Debtor does not argue that reconsideration of this decision is required because of some intervening change in controlling law or the need either to correct a clear error of law or to prevent manifest injustice. North River Ins. Co., 52 F.3d at 1218; Harsco Corp., 779 F.2d at 909; Keyes, 766 F. Supp. at 280. Nor does Debtor argue that reconsideration is necessary because it has newly discovered evidence that is likely to change the outcome of this decision.[8] Reading Broadcasting, 386 B.R. at 567; see also North River Ins. Co., 52 F.3d at 1218; Harsco Corp., 779 F.2d at 909; Keyes, 766 F. Supp. at 280. Rather, Debtor argues that reconsideration is necessary because I abused my discretion by deciding DirectBuy's Third Stay Relief Motion, prior to ruling on DirectBuy's Second Stay Relief Motion.

My July 15, 2009 decision granting DirectBuy's Third Stay Relief Motion was based on my finding that relief was warranted for the following reasons. First, I found that DirectBuy clearly established that Debtor was in default on its post-petition

---

"'unilateral' addendum to the franchise agreement." Debtor's Brief Regarding Undecided Motions, filed on September 18, 2009, docket entry 233, at p.11. Nothing in the documents Debtor introduced as "newly discovered" evidence, however, supports this conclusion.

[8]To the extent Debtor relies on the alleged "newly discovered" evidence it proffered in support of its Motion To Reconsider my July 13, 2009 Order, I reiterate the above discussion in support of my denial of that Motion: (1.) The alleged "newly discovered" evidence is not new; and (2.) the alleged "newly discovered" evidence would not alter the outcome of this proceeding.

obligations to DirectBuy. Second, I also found that Debtor had little, if any, likelihood of reorganizing because it had agreed to reject the lease it held on its only operating location. Third, I had previously determined, in my July 13, 2009 Statement and Order, that DirectBuy had validly terminated the franchise agreement it held with Debtor and that Debtor therefore could not assume the franchise agreement. Not only did Debtor have no location from which to operate its business, but Debtor also had no right to operate a DirectBuy franchise. Furthermore, Debtor was in default on its post-petition obligations to DirectBuy. Given this impossible situation for Debtor, I concluded that DirectBuy had established "cause" for relief from the automatic stay to exercise its remedies under the franchise agreement.

While Debtor again argues that my July 13, 2009 decision to deny Debtor's Motion To Assume the DirectBuy franchise agreement was improper, for the reasons set forth above in this Statement, I reject Debtor's arguments as an attempt to "rehash" arguments it already made. I conclude that my July 13, 2009 decision was correct. Accordingly, Debtor has no rights under the DirectBuy franchise agreement and cannot operate a DirectBuy franchise.

Debtor next argues that DirectBuy was withholding sufficient sums to cover the amount of Debtor's post-petition delinquency. The evidence shows otherwise, despite Debtor's attempt to "rehash" its prior argument that the amount it owes DirectBuy is linked to Section 3.03 of the parties' Franchise Agreement (the section that deals with the

Marketing and Legislative Fund).  I reiterate, once again, my discussion above and I reject

this argument both as erroneous and as an improper ground for reconsideration.

The facts before me follow:  Debtor's franchise agreement with DirectBuy

terminated pre-petition; Debtor rejected the lease it held on its only operating location; and

Debtor was in default on its post-petition obligations to DirectBuy.  I find and conclude

that Debtor clearly had little, if any, likelihood of reorganizing and that DirectBuy had

established cause for relief from the automatic stay to exercise its remedies under the

franchise agreement.  These findings and conclusions were not and are not erroneous.

Debtor's Motion To Reconsider my July 15, 2009 Order and decision must therefore be

denied.

An appropriate Order follows.


BY THE COURT


Date:  November 23, 2009

_____
RICHARD E. FEHLING
United States Bankruptcy Judge